IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

MARTIN STANWOOD                          )
and BRADLEY STANWOOD,                     )
                                         )
                Plaintiffs,              )      TC-MD 140092N
                                         )
        v.                               )
                                         )
MULTNOMAH COUNTY ASSESSOR,                )
                                         )
                Defendant.               )      **FINAL DECISION**

The court entered its Decision in the above-entitled matter on July 29, 2014. The court

did not receive a request for an award of costs and disbursements (TCR-MD 19) within 14 days

after its Decision was entered. The court's Final Decision incorporates its Decision without

change.

Plaintiffs appeal the real market value of property identified as Account R335696

(subject property) for the 2013-14 tax year. A trial was held on June 24, 2014, in the Oregon

Tax Courtroom in Salem, Oregon.[1] Ted A. Martin, attorney at law, appeared on behalf of

Plaintiffs. Plaintiff Martin Stanwood (Stanwood) testified on behalf of Plaintiffs. Barry Dayton

appeared on behalf of Defendant. Sherri Guttormsen (Guttormsen), registered appraiser, testified

on behalf of Defendant. No exhibits were received from Plaintiffs. Defendant's Exhibit A was

received without objection. Following trial in this matter, Plaintiffs filed a Motion for Summary

Judgment (Motion) on June 27, 2014. Defendant filed a letter in response to Plaintiffs' Motion

on July 2, 2014. As of the date of this Decision, Plaintiffs have not filed a reply.

/ / /

/ / /

---

[1] Defendant appeared by telephone.

## I. STATEMENT OF FACTS

Guttormsen testified that she inspected the subject property on May 22, 2014, and provided a description of the subject property in her appraisal report. (*See* Def's Ex A at 5.) The subject property is a 1,152-square foot, one-story, ranch-style, single family detached residential home built in 1979. (*Id.*) It includes a living room with a fireplace, a dining room, three bedrooms, one full bathroom, and one half-bathroom off of the "bedroom suite." (*Id.*) The subject property includes an attached two-car garage, a fenced backyard, and some landscaping. (*Id.* at 4-5.) It is situated on a 0.16-acre lot on Holgate Boulevard, "a main arterial street." (*Id.* at 4.) The subject property is located in the "R2A" zone, which allows development including duplexes, townhouses, row houses, and garden apartments. (*Id.* at 5.)

Stanwood testified regarding the condition of the subject property. He testified that the subject property requires repairs and maintenance including a new fence, a new concrete patio, new gutters, new carpets, and new paint. Stanwood testified that the kitchen is original from 1977 and needs to be replaced.[2] He testified that the composite roof was seven years old and would have to be replaced in a few years. Stanwood testified that the repairs would likely cost about $25,000, although he did not provide any estimates or other evidence of that estimated cost. He testified that, if he were to sell the subject property, he would have to make the repairs he described in order for a potential buyer to obtain bank financing. Guttormsen determined based on her inspection that the subject property was in "average to below average" condition. She testified that she found the condition to be typical for a rental property[3] the age of the subject property. Guttormsen testified that she observed the subject property could use new paint.

---

[2] Stanwood did not address the discrepancy between the parties with respect to the age of the subject property. Defendant reported that the subject property was built in 1979, whereas Stanwood testified it was 1977.

[3] Stanwood testified that the subject property has been leased to tenants for about three months as of the trial date.

Stanwood testified that the subject property's location negatively impacted its real market value. He testified that, as of January 1, 2013, "criminals" lived in the house next to the subject property, but as of the date of trial that house was vacant because the criminals had been arrested. Stanwood testified that a "strip bar" is located one block from the subject property and its patrons can be heard from the subject property leaving the bar at 2:00 a.m. when it closes. Guttormsen testified that she selected comparable sales that were located "on main arterials with similar traffic patterns" and close to the subject property. (*See* Def's Ex A at 6.)

Stanwood testified that he purchased the subject property in December 2010 for $126,000. He testified that he needed a house quickly due to personal reasons and he was able to purchase the subject property and move in within nine days of the sale. Stanwood testified that he paid more than the subject property was worth because of his need to move quickly. He testified that the subject property had been on the market for over 60 days and there were no other offers made to purchase the subject property. (*See also* Def's Ex A at 6.) Guttormsen's appraisal report confirmed that the subject property was on the market for 68 days with a listing price of $139,900 as of October 14, 2010. (*Id.*) She wrote that the subject property sale was an "estate sale" that was pending December 21, 2010, and closed January 3, 2011. (*Id.*)

In their Complaint, Plaintiffs requested that the subject property's 2013-14 real market value be reduced to $108,339. (Ptfs' Compl at 1.) Stanwood testified that the 2012-13 real market value of the subject property was $111,690 and, based on an Oregon Department of Revenue Property Tax Statistics report, he determined that the subject property's 2013-14 real market value should be three percent less than the 2012-13 real market value, which is the basis for Plaintiffs' requested 2013-14 real market value. Plaintiffs did not provide a copy of the Oregon Department of Revenue report as an exhibit. Stanwood testified that he did not obtain an

appraisal of the subject property because the cost of an appraisal was not justified by the potential tax savings. He testified that he has no training as a real estate appraiser, but he has experience buying properties and has purchased nearly 20 properties. Stanwood testified that he would have listed the subject property for $120,000 as of January 1, 2013.

Guttormsen studied market conditions for non-distressed sales between August 2011 and June 2013 and determined that "the market was [appreciating] just prior to and around the time of the assessment date."[4] (Def's Ex A at 8-9, *see also* Def's Ex A at 18.) She found that the median sale price of non-distressed sales increased by $14,900 from the period of August 1, 2011, through June 1, 2012, to August 1, 2012, through June 1, 2013, which was an 11.04 percent increase. (Def's Ex A at 9.)

Guttormsen testified that she considered all three approaches of value, but did not use the cost approach due to the age of the subject property or the income approach because single family residences are not typically held for income production. (*See* Def's Ex A at 10.) She relied on the sales comparison approach to determine the subject property's real market value as of January 1, 2013. (*Id.* at 11.) In her appraisal report, Guttormsen selected five comparable sales located within 0.19 and 1.9 miles of the subject property that sold between June 2012 and May 2013. (*Id.* at 12-13.) Her comparable sales were all one-level homes built between 1973 and 1982 ranging in size from 1,120 to 1,245 square feet. (*Id.* at 12-13.) The lot sizes of Guttormsen's comparable sales ranged from 0.15 to 0.20 acres. (*Id.* at 12-13.) The unadjusted prices of her comparable sales ranged from $144,000 to $167,500. (*Id.* 12-13.) Guttormsen made adjustments for differences in concessions, sale date, condition, room count, gross living area, heating/cooling, garage/carport, and fireplaces for adjusted sale prices ranging from

---

[4] Guttormsen testified that her report included a typographical error on page 9 that she corrected at trial.

$150,000 to $162,000. (*Id.* at 12-13.) Guttormsen testified that she placed the most weight on comparable sales 1 and 2 because they were located in the same R2 zone as the subject property. She determined an adjusted real market value of $150,000 for comparable sales 1 and 2 and concluded that the subject property's real market value was $150,000 as of January 1, 2013. (*Id.* at 10-13.)

The subject property's 2013-14 tax roll real market value, sustained by the board of property tax appeals (BOPTA), was $125,720. (Ptfs' Compl at 2.) Its maximum assessed value was $129,780. (*Id.*) Plaintiffs requested a 2013-14 real market value of $108,339, although Plaintiffs' authorized representative stated at trial that the 2013-14 real market value of subject property probably lies in between the parties' requested real market values. Defendant requested that the court increase the 2013-14 real market value of the subject property to $150,000. (Def's Counterclaim at 2, Jun 11, 2014.)

## II.  ANALYSIS

A.    *Adjudicated Value Under ORS 309.115*

In their Motion, Plaintiffs asserted that BOPTA "set the [real market value] at $126,000 [on] January 1, 2011[,] and $111,690 [on] January 1, 2012. ORS 309.115 locks [D]efendant into its own valuation of the subject property for a period of five years." (Ptfs' Mot Summ J at 1.) Defendant stated in its response that its records "show there was no Order or adjudication involving either 2011 or 2012." (Def's Ltr at 1, Jul 2, 2014.)

Under ORS 309.115(1), a taxpayer who receives "an order correcting the real market value of a separate assessment of property" from the Department of Revenue, BOPTA, this court, or another court, enjoys the protection of that adjudicated real market value for the next

five years after the order is entered.[5] ORS 309.115(2) sets forth several exceptions to the adjudicated value, including "annual trending or indexing" and "[i]ncreases directly related to additions, remodeling or rehabilitation made to the property." ORS 309.115(4) states that if a new order is entered during the five-year period, the adjudicated real market value protection under ORS 309.115(1) applies for the next five years after the new order is entered.

In *Gettman v. Dept. of Rev.* (*Gettman*), this court explained:

"If a taxpayer establishes a value by an appeal, the taxpayer is entitled to the benefit of ORS 309.115. If an assessor does not correctly apply the statute, the taxpayer may appeal. In such appeal, the issue is whether the assessor correctly applied the statute. However, a taxpayer may step outside the protection of the statute and appeal the real market value of the property anew. If the taxpayer appeals the real market value anew, that decision starts a new five-year period."

TC No 3388, WL 300719 at *1 (Aug 5, 1993), citing *Pacificorp v. Dept. of Rev.* (*Pacificorp*), 11 OTR 463 (1990). In other words, a taxpayer may challenge whether the assessor correctly determined the real market value under ORS 309.115 or the taxpayer may challenge the real market value anew, but the taxpayer cannot do both. *See Pacificorp*, 11 OTR at 466 ("the statute does not contemplate allowing a taxpayer to appeal the true cash value of the property and at the same time claim the benefit of ORS 309.115"). In *Gettman*, the court looked to both "the pleadings and plaintiffs' statements at the beginning of trial" to determine the basis of the plaintiffs' appeal and concluded that the plaintiffs were "appealing the real market value of the property." *Gettman*, WL 300719 at *1.

Plaintiffs offered no evidence that they received an adjudicated value for the subject property in either the 2011-12 or 2012-13 tax years. Plaintiffs attached only a 2013-14 BOPTA Order to their Complaint. Plaintiffs' Complaint made no reference to ORS 309.115 or otherwise indicated that this appeal involved a challenge based on a prior adjudicated value. Plaintiffs did

---

[5] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

not raise ORS 309.115 at any point prior to or during trial. Even if Plaintiffs would have been entitled to protection under ORS 309.115, the court concludes that Plaintiffs failed to properly raise the issue and presented their appeal as a challenge to real market value under ORS 308.205.

B.     *Real Market Value Under ORS 308.205(1)*

The issue before the court is the real market value of the subject property for the 2013-14 tax year. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor* (*Richardson*), TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citations omitted). Real market value is defined in ORS 308.205(1), which states:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

The assessment date for the 2013-14 tax year was January 1, 2013. ORS 308.007; ORS 308.210.

The real market value of property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue * * *[.]" ORS 308.205(2). The three approaches of value that must be considered are: (1) the cost approach, (2) the sales comparison approach, and (3) the income approach. OAR 150-308.205-(A)(2)(a). Although all three approaches must be considered, all three approaches may not be applicable in a given case. *Id.* Here, Defendant relied on the sales comparison approach.

The sales comparison approach "may be used to value improved properties, vacant land, or land being considered as though vacant." *Chambers Management Corp v. Lane County Assessor,* TC-MD No 060354D, WL 1068455 at *3 (Apr 3, 2007) (citations omitted). "The court looks for arm's length sale transactions of property similar in size, quality, age and location" to the subject property. *Richardson,* WL 21263620 at *3.

"In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions. When nontypical market conditions of sale are involved in a transaction (duress, death, foreclosures, interrelated corporations or persons, etc.) the transaction will not be used in the sales comparison approach unless market-based adjustments can be made for the nontypical market condition."

OAR 150-308.205-(A)(2)(c).

"In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden shall fall upon the party seeking affirmative relief * * *." ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]t is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept. of Rev.,* 18 OTR 324, 332 (2005) (citing *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002)). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990). "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

Plaintiffs bear the burden of proving that the subject property's 2013-14 real market value should be reduced to $108,339. Plaintiffs failed to present any competent evidence in support of their requested real market value. Stanwood testified that Plaintiffs' requested real market value was based on the application of a market trend from an Oregon Department of Revenue study to the subject property's 2012-13 tax roll real market value. Plaintiffs' methodology is not one of the three approaches of value described in OAR 150-308.205-

(A)(2)(a).  Even if the court accepted Plaintiffs' methodology, Plaintiffs failed to provide any evidence that the subject property's 2012-13 tax roll real market value was its correct real market value and failed to provide a copy of the study upon which they relied.  Plaintiffs presented no other evidence of the subject property's 2013-14 real market value.  The court concludes that Plaintiffs have failed to carry their burden of proof.

C.      *Defendant's Counterclaim*

Defendant filed a counterclaim on June 11, 2014, requesting that the subject property's 2013-14 real market value be increased to $150,000.  Plaintiffs did not file a response to Defendant's counterclaim prior to trial.  Defendant presented evidence in support of its requested real market value at trial on June 24, 2014.  In their Motion, Plaintiffs stated "Defendant's counterclaim was filed more than 30 days after filing and service of [Plaintiffs'] complaint." (Ptfs' Mot Summ J at 1.)  Plaintiffs did not cite any court rule or provide any further explanation of the basis for their Motion for Summary Judgment on Defendant's counterclaim.

Generally, a counterclaim should be asserted in the defendant's answer.  *See* Tax Court Rule (TCR) 13 B ("[a]n answer may include a counterclaim against a plaintiff").[6]  TCR 23 A authorizes a party to amend a pleading by leave of court or by written consent of the adverse party.  Defendant did not assert its counterclaim in its Answer, nor did it seek leave of the court or the consent of Plaintiffs to amend its Answer to include a counterclaim.  However, TCR 23 B states, in pertinent part, "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."  Here, Defendant presented evidence in support of its counterclaim at trial and the

---

[6] TCR 13 is made applicable through the Preface to the Magistrate Division Rules, which states in pertinent part, that "[i]f circumstances arise that are not covered by a Magistrate Division rule, rules of the Regular Division of the Tax Court may be used as a guide to the extent relevant."

court concludes that the requirements of TCR 23 B are satisfied. Moreover, this court has authority under ORS 305.412 to determine the subject property's real market value on the basis of the evidence before the court, without regard to the values pleaded by the parties.

Defendant requests that the court increase the 2013-14 real market value of the subject property to $150,000. As the party seeking affirmative relief, Defendant bears the burden of proof with respect to its request. Guttormsen presented evidence under the sales comparison approach. She selected five sales of properties that were similar in size, age, and location to the subject property and that sold close to the January 1, 2013, assessment date. Guttormsen's comparable sales were overall very similar to the subject property and required relatively few adjustments. Her adjusted sales prices supported her conclusion that the subject property's real market value was $150,000 as of January 1, 2013.

Plaintiffs did not offer any evidence to rebut Defendant's real market value evidence. The court concludes that Defendant carried its burden of proof that the subject property's real market value was $150,000 as of January 1, 2013

### III. CONCLUSION

After careful consideration, the court concludes that Plaintiffs failed to carry their burden of proof that the subject property's real market value was $108,339 as of January 1, 2013. The court further concludes that Defendant carried its burden of proof that the subject property's real market value was $150,000 as of January 1, 2013. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' Motion for Summary Judgment is denied and Plaintiffs' appeal is denied.

/ / /

/ / /

IT IS FURTHER DECIDED that the real market value of property identified as Account R335696 was $150,000 for the 2013-14 tax year.

Dated this ____ day of August 2014.

ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by __mailing__ to: 1163 State Street, Salem, OR 97301-2563; or by __hand delivery__ to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within __60__ days after the date of the Final Decision or this Final Decision cannot be changed.*

*This Final Decision was signed by Magistrate Allison R. Boomer on August 15, 2014. The Court filed and entered this Final Decision on August 15, 2014.*